CAUSE NO. 222751.C **ORIGINAL**

| | | |
|---|---|---|
| **CYNTHIA ULETT LYNCH,** | ) | IN THE DISTRICT COURT OF |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | BELL COUNTY |
| Pfizer Inc | ) | |
| Searle's/Pharmacia's/Pfizer | ) | |
| Mary Katriadakis | ) | |
| Susan Adamo, *et al* | ) | |
| | ) | |
| Defendants | ) | 169th JUDICIAL DISTRICT |

FILED 2007 APR -5 AM 10:54 SHELIA NORMAN DISTRICT CLERK BELL COUNTY TX BY DEPUTY

## PLAINTIFF'S ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES **CYNTHIA ULETT LYNCH**, Plaintiff in the above captioned and numbered cause, complaining of and against **Defendants, Pfizer Inc, Searle'/Pharmacia's/Pfizer, Mary Katriadakis and Susan Adamo** in a STRICT PRODUCT LIABILITY ACTION, and for cause of action would show unto the court the following:

### I.

### ISSUES OF FACT AND LAW

1. Did the Defendant recall the dangerous drug Bextra? Exhibit "A".

2. Did the Defendant recall the dangerous drug Neurontin? Exhibit "B".

3. Did the Defendant acknowledge complaint from Plaintiff about Bextra? Exhibit "C".

4. Did Defendant acknowledge complaint from Plaintiff about Neurontin? Exhibit "D".

5. Bextra sample with no warning. Exhibit "E".

6. Neurontin recalled of 100 mg capsules. Exhibit "F".



7. Did Defendant review Medical records prior to 06-02-2002? Exhibit "G".

8. Medical records showing problems with my heart. Exhibit "H".

9. Balance of Neurontin capsules because of seizures. Exhibit "I".

10. Legal background of Product liability. Exhibit "J".

11. Information supporting facts about Bextra. Exhibit "K".

12. Information supporting facts of Neurontin. Exhibit "L".

## II.

## PARTIES

Plaintiff, **CYNTHIA ULETT LYNCH,** is an individual who resided in Killeen, Bell County, Texas at the time of the incidents, which is the subject of this lawsuit.

Citation may be served on defendants at **Legal Department, Pfizer Inc, 1751 Lake Cook Road, Deerfield, IL 60015** by certified mail, return receipt requested.

## III.

This suit is brought in accordance with the laws of the State of Texas, for the recovery of damages which are in the excess of the minimum jurisdictional limits of the Court, to which Plaintiff is entitled to receive as compensation for the cause of action described below. Accordingly, the Court has jurisdiction over this matter and venue is proper in Bell County, Texas.

## IV.

Plaintiff brings this suit to recover damages for personal injuries sustained by Plaintiff when given the drug Bextra in 06-2002 and the drug Neurontin in 09-2004.

2

## V.

## STRICT LIABILITY

The Law has developed a doctrine known as "strict liability," that allows a person injured by a defective or unexpectedly dangerous product to recover compensation from the maker or seller of the product, without showing that the manufacturer or seller was actually negligent.

Plaintiff alleges that upon these occasions, Plaintiff was not warned of the dangerous side effects of the drugs BEXTRA and NEURONTIN.

a. The seller was in the business of selling the product that caused plaintiff's injuries.

b. The product was in a defective condition when sold, and unreasonably dangerous.

c. The product was intended to reach you without substantial change in the condition in which it was sold.

d. The product wasn't fit for its intended use at the time it left the manufacturer.

e. The defect caused plaintiff's injuries.

f. Plaintiff suffered damages.

Each and all of the above constitute product liability.

## VI.

## PRODUCT LIABILITY - BEXTRA

Plaintiff alleges that Defendants violated section 82.007 of the Civil Practice & Remedies Code. The negligence of Defendants violating section 82.007 constitutes product liability as a matter of law.

At the time of the consumption of this drug in question, Plaintiff was involved in a MVP accident on her job. Plaintiff tried to see doctors but had no insurance.

3

Plaintiff eventually saw Dr. Charles House, who gave plaintiff a box full of samples. Plaintiff was having problems with her heart from December 2002, and also bleeding in BM. Plaintiff could not go back to

Dr. House because she had no insurance. Plaintiff kept that to herself until she was seen at Scott & White and was eventually given a colonoscopy.

Defendant requested Plaintiff's medical records prior to 06-2002. No records were found in that period and there was no evidence Plaintiff ever had a heart problem. Defendant stated from my records from Scott & White, Plaintiff had all kinds of problems. Those problems were documented after Plaintiff took that drug BEXTRA.

## VII.

## PRODUCT LIABILTY- NEURONTIN

In 2004, Plaintiff was given this drug because plaintiff was having pressure in her head from the accident and the doctor recommended this drug. Fifteen pills into taking this drug, Plaintiff was having seizures, could not move her hands and feet. Plaintiff immediately called Texas Rehab and spoke to Louise. Plaintiff contacted the Pfizer Inc.

## VIII.

Plaintiff would show that, as a direct result of taking those medications, Plaintiff suffered severe personal injuries, past and future medical expenses, lost of past and future wages, loss of past and future physical capacity, past and future pain and suffering, and mental anguish.

4

## IX.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully request that Defendants be duly cited to appear and answer herein and that, upon final trial at this cause, that Plaintiff recover judgment against the Defendants the following:

1. past medical expenses;

2. future medical expenses;

3. past lost wages;

4. future lost wages;

5. past physical capacity

6. future physical capacity;

7. past pain and suffering in an amount to be determined by a jury

8. future pain and suffering in an amount to be determined by a jury;

9. past mental anguish in an amount to be determined by a jury;

10. future mental anguish in an amount to be determined by a jury;

11. past bodily impairment in an amount to be determined by a jury;

12. future bodily impairment in an amount to be determined by a jury;

13. past loss of enjoyment of life in an amount to be determined by a jury;

14. future loss of enjoyment of life in an amount to be determined by a jury;

15. costs of court;

16. pre-and post-judgment interest as provided by law; and

17. for such other further relief, both general and special, at law or in equity, to which plaintiff may show justly entitled.

Respectfully submitted,

CYNTHIA ULETT LYNCH
1817 Dusk Drive
Killeen, Texas 76543
(254) 680-7551

By: *[signature]*
CYNTHIA ULETT LYNCH

Pro se

# EXHIBITS

A

FROM PAGE ONE/NEWS

Friday, April 8, 2005     A3

# Painkiller Bextra taken off the market

The Associated Press

WASHINGTON — Doctors are bracing for a flood of confused patients wondering what painkillers are safe, now that the government is ordering scarier warning labels on the most popular prescription brands.

At issue: whether anti-inflammatory medicines called NSAIDs — the backbone of U.S. pain treatment — raise the risk heart attacks and strokes, particularly when taken at high doses or for long periods of time.

Pfizer Inc. reluctantly pulled its blockbuster painkiller Bextra off the market Thursday at the Food and Drug Administration's behest. And the FDA ordered its toughest possible warning about cardiovascular risks on 19 other prescription competitors, from Celebrex to Mobic to high-dose naproxen.

The warnings don't say which drug is the safer choice. The FDA insists there's not enough research yet to rank them, although many drug specialists caution that there are indeed differences — and that some older standbys, like naproxen, shouldn't be causing new concern.

# Cookie: 'Moderation is the key to healthy living'

*Continued from Page A1*

fewer cookies.

But what did that mean? Scarfing one plateful instead of two?

I picked up the telephone. "What's going on with Cookie Monster?" I asked the "Sesame Street" press office. "Why are you doing this?"

They sent me to Dr. every year, focusing not just on teaching numbers and letters but also emotional and physical health. With the rise in childhood obesity, Truglio said "Sesame Street" is concentrating on the need to teach children about healthy foods and physical activity.

This season, each episode opens with a "health tip" about nutrition exercise hygiene and and carrots, and offer parodies, such as "American Fruit Stand." Even guest stars will address healthy activities, such as Alicia Keys talking and singing about the importance of physical activity.

Even politicians have gotten into the act, filming public service announcements with "Sesame Street" residents. In one taping, Senate Majority ster discuss the various textures and tastes of foods.

But what about their position on Cookiegate?

"Even Cookie Monster is learning to control his cookie cravings," Frist told me by e-mail. "His sage advice opened our eyes to the simple joys of a tasty cookie and now reminds us that moderation is the key to healthy living."



# VIOXX® & BEXTRA®
## Linked To Increased Heart Attack Risk

An FDA scientist has testified to congress that Vioxx® and Bextra® are dangerous drugs linked to serious side effects including heart attacks, strokes, and death. In fact, Vioxx® has already been pulled from the market.

The arthritis pain medication Bextra® has been linked to an increased risk in heart attacks, strokes and a potentially fatal skin condition called Stevens Johnson Syndrome. In addition, the FDA recently mandated a stronger warning label for the Bextra packaging to warn users of these possible side effects.