Filed
07 May 18 A10:36
Shelia F. Norman
District Clerk
Bell District

CAUSE NO. 222757-0

| | | |
|---|---|---|
| CYNTHIA ULETT LYNCH, | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | BELL COUNTY, TEXAS |
| PFIZER INC, | § | |
| SEARLE'S/PHARMACIA'S/PFIZER, | § | |
| MARY KATRIADAKIS, | § | |
| SUSAN ADAMO, *et al.* | § | |
| | § | |
| Defendants. | § | 169th JUDICIAL DISTRICT |

**DEFENDANT SUSAN ADAMO'S MOTION TO TRANSFER VENUE
AND, SUBJECT THERETO, ORIGINAL ANSWER**

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES Defendant Susan Adamo (hereinafter referred to as "Defendant") and files this her Motion to Transfer Venue and, Subject Thereto, Original Answer to Plaintiff's Original Petition. Defendant respectfully would show the Court as follows:

**I.**

**MOTION TO TRANSFER VENUE**

This is a pharmaceutical product liability action in which Plaintiff Cynthia Ulett Lynch alleges she sustained personal injuries as a result of ingesting the prescription medications Bextra® ("Bextra") and Neurontin® ("Neurontin"). *See, e.g.*, PLAINTIFF'S ORIGINAL PETITION ("PETITION") at Part IV. Plaintiff maintains that Defendants are liable for those injuries under a theory of strict products liability. *See id.* at Parts V-VII.

Plaintiff's Petition is sufficiently imprecise to raise concerns that venue may not be proper in Bell County. Indeed, the Petition is silent regarding any specific venue allegations and does not plead any particular connection to Bell County. Rather, it includes only a conclusory sentence that "venue is proper in Bell County, Texas." *Id.* at Part III. It therefore is far from

1

clear that this suit was filed in the proper venue. Consequently, pursuant to Rule 86 of the Texas Rules of Civil Procedure, Defendant files this Motion to preserve her right to challenge venue if the facts establish that venue in Bell County is not proper.

Pfizer and Pharmacia are corporations, and Searle is a wholly-owned subsidiary. A suit against a corporation, whether foreign or domestic, may properly be brought in either (1) the county of the corporation's "principal office" in Texas, or (2) the county where "all or a substantial part of the events or omissions giving rise to the claim occurred . . . ." TEX. CIV. PRAC. & REM. CODE. ANN. § 15.002(a) (Vernon 2005). Additionally, when an individual defendant is sued, venue is proper in the county of defendant's residence at the time the cause of action accrued if defendant is a natural person. *Id.* If none of these provisions apply, venue is proper in the county in which the plaintiff resided at the time of the accrual of the cause of action. *Id.* In this case, Defendant:

(1) specifically denies that the county of suit is, or was at the time that Plaintiff's purported causes of action accrued, the county of any defendant's principal office in Texas;

(2) specifically denies that all or a substantial part of the events or omissions giving rise to Plaintiff's purported claims occurred in the county of suit;

(3) specifically denies that any individual defendant resided in the county of suit at the time Plaintiff's purported causes of action accrued; and

(4) specifically denies that Plaintiff resided in the county of suit at the time Plaintiff's purported causes of action accrued.

Given the early stage of this proceeding at the time of this Motion, and the imprecise nature of Plaintiff's pleadings, Defendant cannot identify for the Court the county of proper venue for Plaintiff's claims. Defendant, therefore, requests that she be permitted reasonable time to obtain venue facts and conduct venue discovery. Defendant reserves the right to amend this motion to assert the proper county to which this case should be transferred after she has had sufficient time to discover the venue facts necessary to determine the county of proper venue.

2

# II.

## SUBJECT TO MOTION TO TRANSFER VENUE, ORIGINAL ANSWER

A. **General Denial Pursuant to Texas Rule of Civil Procedure 92**

Subject to her Motion to Transfer Venue, Defendant denies each and every allegation made against her and demands strict proof of same by a preponderance of the evidence.

B. **Affirmative Defenses**

Subject to her Motion to Transfer Venue, and without assuming the burden of proof of such defenses that she would not otherwise have, Defendant affirmatively asserts the following defenses:

1. Plaintiff's Petition fails to state a claim against Defendant upon which relief can be granted.

2. Plaintiff's causes of action are barred in whole or in part by the applicable statute of limitations and/or statute of repose.

3. Plaintiff's causes of action are barred by Chapter 82 of the Texas Civil Practice & Remedies Code, including but not limited to §§ 82.001, 82.003 and 82.007.

4. Plaintiff's causes of action are barred by Texas Civil Practice & Remedies Code § 16.012.

5. Plaintiff's causes of action are barred in whole or in part by the doctrines of laches, waiver, ratification, estoppel, and unclean hands and any other related doctrines and principles, or any one of them, and by Plaintiff's inequitable conduct, lack of diligence, delay and inattention in pursuing such claims.

6. Defendant affirmatively denies she violated any duty owed to Plaintiff.

7. Plaintiff's recovery, if any, is barred entirely, or should be reduced, by Plaintiff's comparative negligence.

3

8. The damages alleged by Plaintiff were caused, solely or partially, or proximately caused by some person or third party for whom Defendant is not legally responsible.

9. This action is subject to the proportionate responsibility provisions of Chapter 33 of the Texas Civil Practice and Remedies Code, including (without limitation) the requirement of § 33.003 thereof that the trier of fact determine the relative responsibility of each claimant, defendant, and responsible third-party that may be joined in the suit.

10. If Plaintiff settles with any other person or entity, then Defendant reserves the right to make a written election of credit for settlements under § 33.014 of the Texas Civil Practice and Remedies Code.

11. Plaintiff's alleged damages resulted from new and independent, unforeseeable, superseding and/or intervening causes unrelated to any conduct of Defendant.

12. Plaintiff's alleged damages were not proximately caused by any act or omission of Defendant.

13. The producing causes of the damages Plaintiff allegedly suffered were acts or omissions of some person, cause or entity other than Defendant.

14. Plaintiff's alleged damages were the result of pre-existing and/or unrelated conditions that were independent of, or far removed from, any conduct of Defendant.

15. Defendant affirmatively pleads that Plaintiff cannot recover under a product liability theory against her because she did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, Plaintiff's damages, if any, were caused by changes and/or alterations to the product at issue made by persons not within Defendant's control.

16. Defendant affirmatively pleads that Plaintiff cannot recover under a product liability theory against her because she did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, the methods, standards, and techniques utilized with respect to the manufacture, design, and marketing of the Bextra and/or Neurontin, if any, used in this case, included adequate warnings and instructions with respect to the product's use in the package insert and other literature, and conformed to the generally recognized, reasonably available, and reliable state of the knowledge at the time the product was marketed.

17. Defendant affirmatively pleads that Plaintiff cannot recover under a product liability theory against her because she did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, Plaintiff's claims are barred because Bextra and Neurontin were designed, tested, manufactured and labeled in accordance with the state-of-the art industry standards existing at the time of the sale.

18. Defendant affirmatively pleads that Plaintiff cannot recover under a product liability theory against her because she did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense and based on the state of scientific, medical, and technological knowledge at the time that Bextra and Neurontin were marketed, Bextra and Neurontin were reasonably safe for their normal and foreseeable use at all relevant times.

19. Defendant affirmatively pleads that Plaintiff cannot recover under a product liability theory against her because she did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, any claims by Plaintiff for inadequate warnings are controlled by, and barred under, the learned intermediary doctrine.

20. Defendant affirmatively pleads that Plaintiff cannot recover under a product liability theory against her because she did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, Plaintiff's claims are governed, in whole or in part, by Sections 2 and 4 of the Restatement (Third) of Torts: Product Liability (including the comments thereto) because Defendant complied with all applicable statutes and with the requirements and regulations of the Food and Drug Administration.

21. Defendant affirmatively pleads that Plaintiff cannot recover under a product liability theory against her because she did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, Plaintiff's claims against Defendant are barred under Section 402A, comments j and/or k of the Restatement (Second) of Torts.

22. Defendant affirmatively pleads that Plaintiff cannot recover under a product liability theory against her because she did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, Plaintiff's claims against Defendant are barred under Sections 2, 4, and 6 *et seq.* of the Restatement (Third) of Torts: Product Liability. Alternatively, Plaintiff's claims are barred because the product's benefits outweighed its risks.

23. Defendant affirmatively pleads that Plaintiff cannot recover under a product liability theory against her because she did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, Plaintiff's claims are barred in whole or in part because Bextra and/or Neurontin "provide[] net benefits for a class of patients" within the meaning of comment f to Section 6 of the Restatement (Third) of Torts: Product Liability.

6

24. Defendant affirmatively pleads that Plaintiff cannot recover under a product liability theory against her because she did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, Plaintiff's claims are barred, in whole or in part, by the doctrine of accord and satisfaction.

25. Defendant affirmatively pleads that Plaintiff cannot recover under a product liability theory against her because she did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, Plaintiff's claims are barred in whole or in part because any alleged defect was not known or not reasonably scientifically knowable at the time the product was distributed.

26. To the extent that Plaintiff's claims are based on a theory providing for liability without proof of causation, the claims violate Defendant's rights under the United States Constitution.

27. Plaintiff's claims are barred, in whole or in part, because Plaintiff did not incur any ascertainable loss as a result of Defendant's conduct.

28. The damages, if any, recoverable by Plaintiff must be reduced by any amount of damages legally caused by Plaintiff's failure to mitigate such damages in whole or in part.

29. Plaintiff's claims are barred in whole or in part by the unforeseeable product misuse and/or abnormal or unintended use of the product.

30. Plaintiff's claims are barred by the failure to comply with conditions precedent to the right to recover.

31. Plaintiff's claims are barred because Defendant's conduct is not the producing cause, a proximate cause, or a cause-in-fact of Plaintiff's alleged injuries.

32. Plaintiff's claims must be dismissed because Plaintiff would have taken Bextra and/or Neurontin even if the product labeling contained the information that Plaintiff contends should have been provided.

33. Plaintiff's claims are barred in whole or in part by intervening and/or superseding acts.

34. Plaintiff's claims are barred in whole or in part by the assumption of the risk associated with the purchase and/or use of the product.

35. Plaintiff's claims are barred in whole or in part by the failure to heed warnings and/or failure to follow instructions.

36. Plaintiff's claims are barred in whole or in part by the doctrine of informed consent. Plaintiff was informed of the risks associated with treatment and willingly consented to treatment despite those risks. Specifically, Plaintiff gave informed consent to the prescribing physician(s) before taking Bextra and/or Neurontin, alone or in combination with any other drug(s).

37. Plaintiff's injuries, if any, were caused by an idiosyncratic reaction to the product for which Defendant cannot be held responsible.

38. The duty to obtain Plaintiff's informed consent prior to prescribing Bextra and/or Neurontin, alone or in combination with any other drug(s), rested solely with the prescribing physician(s).

39. Plaintiff may not assert a claim against Defendant for negligent misrepresentation as Plaintiff did not suffer a pecuniary loss as a result of any alleged misrepresentation by Defendant.

40. Any claim of negligent misrepresentation is barred by the Plaintiff's failure to justifiably rely on any alleged misrepresentation of Defendant.

8

41. Any claim of misrepresentation is barred because any alleged misrepresentation on which Plaintiff relied did not constitute a misrepresentation of material facts.

42. Defendant affirmatively pleads that Plaintiff cannot recover under a product liability theory against her because she did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, Plaintiff's claims are barred, in whole or in part, because the manufacturing, labeling, packaging, and any advertising of the product complied with the applicable codes, standards and regulations established, adopted, promulgated or approved by any applicable regulatory body, including but not limited to the United States, any state, and any agency thereof.

43. Defendant affirmatively pleads that Plaintiff cannot recover under a product liability theory against her because she did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, Plaintiff's claims are barred in whole or in part by the doctrine of federal preemption. The manufacture, marketing, and labeling of Bextra and Neurontin was and is controlled by federal law, and the conduct relating to the product at issue was at all times in compliance and obedience with applicable federal law. If Plaintiff's causes of action against Defendant are permitted and allowed, they would impede, impair, interfere with, frustrate and/or burden the effectiveness of federal law regulating the field of prescription drugs and would constitute an invalid burden on interstate commerce, violating the supremacy and commerce clauses of the United States Constitution, Article VI, Section 2 and Article I, Section 8, respectively, as set forth in *Buckman Co. v. Plaintiff's Legal Comm.*, 531 U.S. 341 (2001). Plaintiff's claims, in whole or in part, are preempted, or barred by applicable federal law, including any claim based in whole or in part on:

9

(a) any allegation of negligence *per se* or that Defendant violated federal regulations, including any regulations promulgated or enforced by the Food and Drug Administration;

(b) any allegation that Defendant committed "fraud" on, or otherwise misled, made misrepresentations to, concealed material information from, or violated reporting requirements imposed by any agency of the federal government, including the Food and Drug Administration;

(c) any allegation that Bextra and/or Neurontin were not "safe and effective" or that the risks of the drug(s) outweighed their benefits;

(d) any allegation that Defendant failed to give Plaintiff's healthcare providers adequate warnings concerning the risks associated with Bextra and/or Neurontin; and/or

(e) any allegation that, if accepted, would impose standards of care in addition to, or different from, those imposed by federal law, including federal regulations promulgated by the Food and Drug Administration.

44. Defendant affirmatively pleads that Plaintiff cannot recover under a product liability theory against her because she did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, Plaintiff's claims are barred, in whole or in part, by the doctrine of abstention in that the common law gives deference to discretionary actions by the United States Food and Drug Administration under the Federal Food, Drug, and Cosmetic Act.

45. Defendant affirmatively pleads that Plaintiff cannot recover under a product liability theory against her because she did not manufacture, assemble, sell, or distribute any product at issue. Without waiving said defense, Plaintiff's claims are barred, in whole or in part, by the doctrines of primary jurisdiction and exhaustion of administrative remedies, because the FDA has exclusive or primary jurisdiction over the matters asserted in the Petition.

46. To the extent applicable, Plaintiff's claims for damages are barred, in whole or in part, by the doctrines of *res judicata* (claim preclusion) and/or collateral estoppel (issue preclusion).

47. The standards in Texas governing the award and review of damages for non-pecuniary damages, including damages for mental anguish and pain and suffering, are impermissibly vague or simply non-existent, and are inadequate to ensure that such awards do not include amounts intended as exemplary damages, which are impermissible in a compensatory damages award.

48. Plaintiff's claims for non-pecuniary damages are unconstitutionally vague and/or overbroad, and are in contravention of Defendant's rights under each of the following constitutional provisions:

    (a) the Due Process Clause of the Fifth and Fourteenth Amendments of the United States Constitution;

    (b) the Takings Clause of the Fifth Amendment of the United States Constitution;

    (c) the Excessive Fines Clause of the Eighth Amendment of the United States Constitution;

    (d) the Equal Protection Clause of the Fourteenth Amendment; as well as the various provisions of the Texas Constitution, including but not limited to art. I §§ 3, 13, 14, 16 and 19.

49. As set forth in *BMW of North America v. Gore*, 517 U.S. 559 (1996), *State Farm Mutual Automobile Ins. Co. v. Campbell*, 538 U.S. 408 (2003) and *Philip Morris USA v. Williams*, 127 S. Ct. 1057 (2007), the Due Process Clause of the United States Constitution protects Defendant from any award of damages that:

    (a) is based, in whole or in part, on conduct which did not harm the Plaintiff;

    (b) is based, in whole or in part, on conduct and/or harm that occurred wholly outside Texas;

    (c)    is based, in whole or in part, on conduct that is the exclusive province of federal law;

    (d)    is based, in whole or in part, on comparisons of the relative wealth of Defendant and Plaintiff; or

    (e)    is grossly disproportionate to the harm suffered by Plaintiff.

Because the standards in Texas governing the award and review of damages for non-pecuniary damages, including damages for mental anguish and pain and suffering, are impermissibly vague or simply non-existent, they are inadequate to ensure that such awards are not based on impermissible considerations. Any award of non-pecuniary damages in this case would therefore be in contravention of the Due Process standards set forth in *BMW of North America v. Gore*, 517 U.S. 559 (1996), *State Farm Mutual Automobile Ins. Co. v. Campbell*, 538 U.S. 408 (2003), and *Philip Morris USA v. Williams*, 127 S. Ct. 1057 (2007).

50.     Defendant hereby gives notice that she intends to rely upon such other defenses as may become available or apparent during discovery proceedings. Defendant reserves the right to amend her answer and to further assert affirmative defenses.

### III.

### JURY DEMAND

Subject to her Motion to Transfer Venue, Defendant hereby demands a trial by jury.

## IV.

## PRAYER

WHEREFORE, Defendant prays that this cause shall be transferred to a county of proper venue, that Plaintiff take nothing by her suit, that Defendant be discharged with her costs expended in this matter, and for such other and further relief to which Defendant may be justly entitled.

Respectfully submitted,

**CLARK, THOMAS & WINTERS,**
**A PROFESSIONAL CORPORATION**

By:  /s/ J. Andrew Hutton
Kenneth J. Ferguson
Attorney-in-Charge
State Bar No. 06918100
Leslie A. Benitez
State Bar No. 02134300
Kelly R. Kimbrough
State Bar No. 00794984
J. Andrew Hutton
State Bar No. 24012878

P.O. Box 1148
Austin, Texas 78767
(512) 472-8800
(512) 474-1129 [Fax]

**ATTORNEYS FOR DEFENDANT**
**SUSAN ADAMO**

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was forwarded in the manner described below to the following interested parties on this 18th day of May, 2007:

*Via Certified Mail, Return Receipt Requested*

Cynthia Ulett Lynch
1817 Dusk Drive
Killeen, Texas 76543
*Plaintiff* – **Pro Se**

                                              /s/ J. Andrew Hutton

14